FILED

2010 Aug-27  AM 10:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CAROLYN A. FORD, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 1:09-CV-01521-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Plaintiff, Carolyn A. Ford, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Ford timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Ford was fifty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision.  She has a high school education along with some

completed college coursework and a two-year degree qualifying her as a medical office assistant.  (Tr. at 13.)  Her past work experiences include employment as a shipping clerk, delivery truck driver, teacher's aide, kitchen helper, and mail sorter. *Id*.  Ms. Ford claims that she became disabled on June 4, 2007, due to mini strokes, hypertension, a pinched nerve, a deteriorating right hip bone, and glaucoma. *Id.*

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."    20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.    20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).    These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii),  416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.

20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Ford meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 18.)  He further determined that Ms. Ford has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id*.  According to the ALJ, Plaintiff's obesity and back and leg pain are considered "severe" based on the requirements set forth in the regulations.  *Id*.  He found, however, that these impairments, alone or in combination, do not equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  *Id*.  Finding her allegations not credible, the ALJ determined that she has the following residual functional capacity: light work allowing a sit or stand option with no more than occasional bending, climbing, or stooping; no pushing or pulling with her upper or lower extremities; no driving; and no work at unprotected heights.  *Id*.

According to the ALJ, Ms. Ford has no transferable skills from her past relevant work, is approaching advanced age, and has at least a high school

education.   The ALJ found that Ms. Ford's residual functional capacity permits a significant range of light work. (Tr. at 19.)   Even though she cannot perform the full range of light work, using Medical-Vocation Rule 201.25 as a guideline, the ALJ found a significant number of jobs exist in the national economy that Ms. Ford could perform, including work as a general office entry-level clerk, administrative support worker, or receiving clerk. *Id*.  The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision."  *Id*.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Ford alleges that this Court should reverse and remand the ALJ's decision for three reasons.   First, she suggests that the ALJ failed to properly evaluate or credit her complaints of pain under the applicable standard. (Doc. 8.)  Second, she contends that the ALJ failed to develop the record fully. *Id*. And third, she argues that substantial evidence augurs against the ALJ's concluding that she retained the ability to perform light work. *Id*.


    A.    Ms. Ford's Complaints of Pain.

The Eleventh Circuit allows claimants to establish disability based on pain with their own testimony if they show (1) evidence of an underlying medical condition and either (2) that objective medical evidence corroborates the pain's severity or (3) that the underlying medical condition could reasonably be expected to cause the pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   If the ALJ decides not to credit a claimant's testimony, he must "articulate explicit and adequate reasons for doing so."   *Id*. at 1223.   Failure to articulate reasons requires a court to

accept the testimony as true.  *Id.*

Ms. Ford testified that she has constant pain in her lower back radiating down both legs.  This pain, she stated, averages a seven out of ten on a daily basis.  Her pain, she continued, forces her to sit or lie down six hours a day, prevents her from picking up objects over ten pounds, allows her to stand less than ten minutes at a time, and responds only partially to epidurals.  She also said that she treats her pain with Tylenol because she cannot afford prescription medication.  (Tr. at 13.)

The ALJ found that Ms. Ford's testimony about her pain and its impact on her ability to work was not credible.  (Tr. at 15.)  He based this finding on the degree of medical treatment she required and on the two examinations conducted at the behest of the Disability Determination Service, one in July 2007, by Dr. Sathyan Iyer and one in April 2008, by Dr. Morton Rickless.  (Tr. at 15-16.)  In particular, the ALJ noted that Ms. Ford had been hospitalized once, had not required surgery, and had visited the emergency room once.  (Tr. at 15.)  Chest pain rather than her current conditions caused the hospitalization, which did not indicate cardiac disease. *Id.*  The ALJ reviewed objective medical evidence of Ms. Ford's

treatment: x-rays showing lumbar scoliosis with arthritis.  *Id.*

Additionally, the ALJ relied on Dr. Iyer's and Dr. Rickless's opinions. Dr. Iyer opined that Ms. Ford's conditions significantly impaired her ability to bend, lift, climb, sit, or stand for "too long." (Tr. at 117.)  Similarly, Dr. Rickless indicated that Ms. Ford's conditions did not limit her sitting but did limit her standing and walking to reasonable time periods.  (Tr. at 132.)  She could still lift and carry light or medium weights, Dr. Rickless added.  *Id.*

The ALJ concluded that the evidence "fail[ed] to corroborate the degree of restrictions asserted." (Tr. at 16.) Ms. Ford, as the ALJ reasoned, could not meet either of the two final prongs of the applicable pain standard: the objective medical evidence did not support her claims and her conditions could not reasonably give rise to her claims. This Court agrees with the ALJ, and finds that he provided explicit and reasonable reasons for rejecting her testimony.

Nevertheless, Plaintiff relies on Social Security Ruling 96-7P which provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations

that the individual may provide. . ." SSR 96-7P, 1996 WL 374186 (July 2, 1996).   Ms. Ford argues that the ALJ failed to comply with this ruling because he relied on her sparse treatment as evidence mitigating the seriousness of her pain without considering whether the sparse treatment stemmed from her inability to afford more extensive medical care.   (Doc. 8.)

The Court disagrees with Ms. Ford's argument.   Nothing indicates that her failure to undergo treatment was a result of a lack of financial resources.   For instance, the ALJ inferred that her statements concerning her pain were not credible, in part, because surgery had not been recommended for her back pain.   The Court is unsure how a lack of financial resources could affect a surgical recommendation.   If surgery had been recommended, if  Ms. Ford failed to undergo it because of financial difficulty, and if the ALJ inferred from her hesitance to undergo surgery that her back pain was minimal, then her argument might persuade.   None of those contingencies occurred, however.   In addition, the ALJ pinned the bulk of his analysis on Dr. Iyer's and Dr. Rickless's exams, not on  Ms. Ford's prior medical treatment.

At any rate, substantial evidence from the record suggests that Ms. Ford overstates her financial resource's impact on her medical care.  For example, she argues that a Dr. Carla Thomas refused to see her based on her lack of insurance.  But Ms. Ford's own testimony shows that her appointment was simply at the wrong time.  Uninsured patients needed appointments at earlier times.  Dr. Rickless noted that, in any event, Ms. Ford had seen Dr. Carla Thomas.  (Tr. at 129.)

In sum, the ALJ properly evaluated Ms. Ford.  He found that she could not meet the second or third prongs of the applicable standard.  This Court agrees.


B. Development of the Record.

Ms. Ford contends that the ALJ's failure to develop the record fairly and fully mars his conclusion that she remains capable of light work.  In particular, Ms. Ford argues that the record is incomplete because the ALJ should have obtained records concerning previous MRIs, epidural shots, and physical therapy treatments.

Case law obligates the ALJ, not the claimant, to develop the record

because the proceeding is non-adversarial. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the record reveals evidentiary gaps resulting in unfairness or prejudice, this court must remand the case for the ALJ to develop the record further. *Id.* at 1423. In sum, the record must be sufficient for the ALJ to evaluate Ms. Ford's impairments and functional ability. *Id.*

But, of course, Ms. Ford retains the ultimate burden of proving that she is disabled. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Here, Ms. Ford referenced a dearth of medical records that the Social Security Administration ("SSA") buttressed by providing her with two consultive examinations. For example, on both SSA Form 3368 and Form 3441, Ms. Ford listed only one entity, North East Alabama Regional Medical Center, in the space for her to list which providers may have her medical records. (Tr. at 56, 69.) The SSA obtained these records. (Tr. at 97-113.) Because she listed so few medical providers, the SSA then ordered multiple examinations at its own expense, including the two consultative exams by Drs. Iyer and Rickless and one residual functional capacity assessment by Dr. Richard Whitney.

Ms. Ford cannot show that the failure of SSA to obtain records documenting previous MRIs, epidural shots, and physical therapy treatments prejudiced her.  She did not alert the SSA that these records existed.  At any rate, Dr. Rickless, an orthopedic surgeon, knew of Ms. Ford's epidurals, physical therapy, and previous MRIs. (Tr. at 129.) He then performed functional tests and read x-rays in developing his own conclusions, on which the ALJ relied.  (Tr. at 120, 129.)  Since the SSA provided these additional exams, the ALJ had sufficient documentation in front of him to evaluate Ms. Ford's allegations.

C.    ALJ's Finding that Ms. Ford's RFC Permits Light Work.

Lastly, Ms. Ford argues that the ALJ erred in finding that she retains the ability to perform light work.  At the hearing, the ALJ, rather than any medical advisors, determines a claimant's RFC.  *See* 20 C.F.R. § 404.1546. Substantial evidence supports the ALJ's decision that Ms. Ford retains the ability to perform light work.

Federal Regulations define light work as that involving lifting less than twenty pounds along with sitting "most of the time with some pushing and

pulling of arm or leg controls" or standing a "good deal."  20 C.F.R. §
404.1567.  The ALJ concluded that Ms. Ford had the RFC to perform light
work allowing a sit/stand option along with occasional bending, climbing,
and stooping, but no pushing or pulling with her limbs.  To support this
conclusion, the ALJ relied on Dr. Iyer's opinion that Ms. Ford could not
bend, lift, climb, or stand "too long."  (Tr. at 117.)  He also relied on Dr.
Rickless's assessment that Ms. Ford "would have no limitations on sitting."
(Tr. at 132.)

    But the ALJ did not accept every opinion in toto. In weighing the
opinions as regulations require, the ALJ critically reviewed each.   For
example, Dr. Whitney opined that Ms. Ford could lift up to fifty pounds;
stand or sit for six hours a day at a time; push or pull without limits; and
climb, stoop, kneel, and crouch with few limits.  (Tr. at 122-24.)  The ALJ
discounted this opinion, finding Ms. Ford's activity much more restricted and
adopting a sit or stand option for light work in line with the disability
specialist's assessment that she could alternate between sitting, standing,
and walking as long as she spent no more than four, two, and one hours at
a time, respectively, doing each.  (Tr. at 135.)

Nevertheless, Ms. Ford argues that the ALJ erred by appearing to accept some parts of Dr. Iyer's exam while ignoring other parts. (Doc. 8, at 10.)  The ALJ did not mention the portion of Dr. Iyer's opinion where she opined that Ms. Ford could not sit for too long.  Regardless of whether the ALJ "ignored" part of Dr. Iyer's opinion, substantial evidence still supports the ALJ's finding.  The ALJ found that Ms. Ford could work in a setting allowing her to sit or stand.  (Tr. at 18.)  This finding coincides with Dr. Iyer's opinion that Ms. Ford could not sit or stand too long as well as Dr. Rickless's opinion.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms. Ford's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 26th day of August 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE